UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| SHASTA LINEN SUPPLY, INC., a California corporation, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>APPLIED UNDERWRITERS, INC., a Nebraska corporation; APPLIED UNDERWRITERS CAPTIVE RISK ASSURANCE COMPANY, a British Virgin Islands company; CALIFORNIA INSURANCE COMPANY, a registered California insurance company; APPLIED RISK SERVICES, INC., a Nebraska corporation,<br><br>Defendants. | CIV. NO. 2:16-158 WBS AC<br><br><u>MEMORANDUM AND ORDER RE: MOTION FOR RECONSIDERATION</u> |

----oo0oo----

Plaintiff Shasta Linen Supply filed this action against defendants Applied Underwriters ("AU"), Applied Underwriters Captive Risk Assurance Company ("AUCRA"), Applied Risk Services

1

("ARS"), and California Insurance Company ("CIC"),[1] alleging that defendants fraudulently marketed and sold a workers' compensation insurance program to it and other employers in violation of California law.  (First Am. Compl. ("FAC") at 15-22 (Docket No. 5).)  Presently before the court is plaintiff's motion for reconsideration of the court's June 20, 2016 Order ("June 20 Order") partially granting defendants' motion to dismiss.  (Pl.'s Mot. for Reconsideration ("Pl.'s Mot.") (Docket No. 33).)

I.   Factual and Procedural Background

Defendants allegedly marketed and sold a workers' compensation insurance program--the EquityComp program--to plaintiff and other California employers.  (FAC ¶¶ 17, 57.)  Four days after the EquityComp policies took effect for plaintiff, defendants allegedly required plaintiff to sign, pursuant to EquityComp "practices and procedures," a Reinsurance Participation Agreement ("RPA") which modified the terms of existing EquityComp policies, including their rates.  (Id. ¶¶ 2, 24, 44, 46.)

On August 29, 2014, plaintiff filed an administrative appeal with the California Department of Insurance, challenging, among other things, the legality of the RPA.  (Pl.'s Request for Judicial Notice ("RJN") Ex. A, Ins. Comm'r's June 20 Decision & Order ("Comm'r's Order") at 4 (Docket No. 34-1).[2])  Plaintiff

---

[1] AU is the parent company of AUCRA and ARS, and controls CIC through another subsidiary.  (Pl.'s Request for Judicial Notice Ex. A, Ins. Comm'r's June 20 Decision & Order at 9-10 (Docket No. 34-1).)

[2] The court takes judicial notice of the Commissioner's Order because it is a public record whose existence "can be

2

argued that the RPA was void as a matter of law because defendants did not file the RPA with the Commissioner thirty days prior to when it was to take effect, as required under California Insurance Code section 11735.[3]  (Id. at 2.)

Section 11735 provides that "[e]very insurer shall file with the commissioner all rates and supplementary rate information that are to be used in this state . . . not later than 30 days prior to the effective date."  Cal. Ins. Code § 11735(a).  Section 11737 states that "[t]he commissioner may disapprove a rate if the insurer fails to comply with the filing requirements under Section 11735."  Id. § 11737(a).  Policyholders harmed by the application of an insurance rate may file an administrative appeal with the Commissioner under section 11737.  Id. § 11737(f).  The Commissioner may then "affirm, modify, or reverse" the rate after a hearing on the matter.  Id.

On January 26, 2016, plaintiff brought an action in this court alleging fraud and unfair competition against defendants for their marketing and sale of EquityComp and its RPA.  (Compl. (Docket No. 1).)  With respect to the RPA, plaintiff again argued that the RPA was void because defendants did not file it with the Commissioner prior to its effectuation, pursuant to section 11735.  (Id. ¶ 3.)  Billing plaintiff under

---

accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  See Fed. R. Evid. 201(b)(2); Interstate Nat. Gas Co. v. S. Cal. Gas Co., 209 F.2d 380, 385 (9th Cir. 1953) (stating that federal courts may take judicial notice of administrative agency records).

[3]  Unless otherwise specified, all statutes referenced in this Order are from the California Insurance Code.

3

the void RPA, plaintiff argued, constituted fraud and unfair business practice. (Id. ¶ 4.) Defendants moved to dismiss that argument to the extent it relied on section 11735, arguing that a rate is legal unless and until the Commissioner holds a hearing and disapproves the rate, pursuant to section 11737. (Docket No. 17 at 6.)

On June 20, 2016, the court granted defendants' motion to the extent plaintiff relied on section 11735, stating that "a rate that has not been filed as required by § 11735 is not an unlawful rate unless and until the Commissioner conducts a hearing and disapproves the rate" pursuant to section 11737. (June 20, 2016 Order ("June 20 Order") at 4 (Docket No. 30).) Because plaintiff did not allege that the Commissioner held a hearing and disapproved the RPA, the court concluded, it did not plausibly allege that the RPA was void. (Id. at 4-5.)

On the same day, the Commissioner of the California Department of Insurance ("Commissioner") issued a Decision & Order in plaintiff's administrative case ("Commissioner's Order"), holding that the RPA "must be filed and approved by the Commissioner pursuant to [section] 11735 before use in this State." (Comm'r's Order at 62.) Because defendants did not file the RPA before it took effect, the Commissioner stated, the "RPA is void as a matter of law." (Id. at 65-66.)

Based on the Commissioner's Order, plaintiff now moves this court to reconsider its June 20 Order pursuant to Federal Rule of Civil Procedure 60(b)(6). Plaintiff requests that the court issue a new order finding that it may base its unfair competition claim "on [defendants'] failure to file the RPA in

4

violation of § 11735." (Pl.'s Mot., Mem. ("Pl.'s Mem.") at 6.)

II. Legal Standard

Though plaintiff moves under Rule 60(b),[4] its motion is more appropriately considered under Rules 54(b) and 59(e).

Rule 60(b) applies only to "final judgment[s], order[s], or proceeding[s]. United States v. Martin, 226 F.3d 1042, 1048 n.8 (9th Cir. 2000) ("Rule 60(b) . . . applies only to motions attacking final, appealable orders."); Sch. Dist. No. 5 v. Lundgren, 259 F.2d 101, 104 (9th Cir. 1958) (Rule 60(b) "applies only to judgments, orders, or proceedings which are 'final.'"). The Ninth Circuit defines such judgments, orders, and proceedings as "those which terminate the litigation in the district court subject only to the right of appeal." Corn v. Guam Coral Co., 318 F.2d 622, 629 (9th Cir. 1963). The June 20 Order did not terminate plaintiff's case in this court. (June 20 Order at 5 n.4 (noting that plaintiff's claims may proceed on non-dismissed grounds).)

Rule 54(b), by contrast, authorizes district courts to "revise[]" interlocutory orders--orders that "adjudicate[] fewer than all the claims or the rights and liabilities of fewer than all the parties"--before entry of a judgment ending a case in its

---

[4] Plaintiff also cites Local Rule 230(j) as a basis for its motion. (Pl.'s Mot. at 2.) Under that rule, plaintiff must show that "new or different facts or circumstances are claimed to exist which did not exist or were not shown upon such prior motion" and explain "why [such] facts or circumstances were not shown at the time of the prior motion." E.D. Cal. L.R. 230(j)(3)-(4). Plaintiff has satisfied Rule 230(j) by showing that the Commissioner's Order, the basis for plaintiff's pending motion, was not issued when the parties briefed and argued defendants' motion to dismiss. (Pl.'s Mem. at 6.)

5

entirety. Fed. R. Civ. P. 54(b).  Additionally, Rule 59(e) authorizes district courts to "alter or amend a judgment," Fed. R. Civ. P. 59(e), including appealable interlocutory orders, Balla v. Idaho State Bd. of Corr., 869 F.2d 461, 466 (9th Cir. 1989) ("[T]he word 'judgment' [as used in the Federal Rules of Civil Procedure] encompasses . . . appealable interlocutory orders.").  The court's June 20 Order is an interlocutory order because it merely dismissed plaintiff's reliance on section 11735 while leaving other grounds for its claims open.  (See June 20 Order at 5.)  Accordingly, the court construes plaintiff's motion as being brought under Rules 54(b) and 59(e).

        The standard of review for motions to reconsider is the same under both rules.  Lal v. Felker, No. 2:07-CV-2060 KJM EFB, 2014 WL 3362353, at *1 (E.D. Cal. July 8, 2014) (Mueller, J.) ("The standards [for motions to reconsider under Rules 54 and 59] are the same . . . Courts rely on Rule 59 cases when discussing the standard for Rule 54 motions."); see also Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. California, No. CIV.S-04-2265 FCD KJM, 649 F. Supp. 2d 1063, 1069 (E.D. Cal. 2009) (Damrell, J.) (relying on Rule 59 cases in discussing Rule 54 motion to reconsider); Drover v. LG Elecs. USA, Inc., No. 2:12-CV-510 JCM VCF, 2013 WL 632103 (D. Nev. Feb. 19, 2013) (same).

        Motions for reconsideration "are directed to the sound discretion of the court."  Riley v. Giguiere, No. CIV.S-06-2126 LKK KJM, 631 F. Supp. 2d 1295, 1310 (E.D. Cal. 2009) (Karlton, J.); see also McDowell v. Calderon, 197 F.3d 1253, 1256 (9th Cir. 1999) (reviewing district court's denial of reconsideration for abuse of discretion).  They are an "extraordinary remedy," one

that should be used "sparingly in the interests of finality and the conservation of judicial resources." Kona Enters. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000). Plaintiff may not use a motion to reconsider "to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 880 (9th Cir. 2009) (citing Kona Enters, 229 F.3d at 890).

Against this backdrop, the Ninth Circuit has held that "[r]econsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993); see also Smith v. Clark Cty. Sch. Dist., 727 F.3d 950, 955 (9th Cir. 2013) (holding the same); Nunes v. Ashcroft, 375 F.3d 805, 807 (9th Cir. 2004) (holding the same). "There may also be other, highly unusual, circumstances warranting reconsideration." Sch. Dist. No. 1J, 5 F.3d at 1263.

Here, plaintiff does not present new factual evidence or highly unusual circumstances warranting reconsideration of the June 20 Order. Instead, plaintiff argues that the Commissioner's Order is a change "in controlling authority . . . meriting reconsideration by this court." (Pl.'s Mem. at 6.) Plaintiff also continues to contend that the court's June 20 Order was in error. (See Pl.'s Reply at 6-10 (Docket No. 41).)

///
///

7

III. Discussion

    A.    The Commissioner's Order is Not Controlling Law

The Commissioner's Order interpreted section 11735 to require that the RPA "be filed and approved by the Commissioner pursuant to [section] 11735 before use in [California]." (Comm'r's Order at 62.) "Failure to do so," according to the Commissioner, "renders the plan[] unlawful." (Id.) That interpretation stands in direct conflict with this court's June 20 Order, which held that "a rate that has not been filed as required by § 11735 is not an unlawful rate unless and until the Commissioner conducts a hearing and disapproves the rate." (June 20 Order at 4.) The court must decide, therefore, whether the Commissioner's Order constitutes "controlling law" as to compel reconsideration of its June 20 Order.

As an initial matter, federal courts must apply state substantive law when sitting on diversity jurisdiction. See Erie R. Co. v. Tompkins, 304 U.S. 64, 92 (1938). Federal courts in this and other circuits have held that administrative deference is a substantive question. See Alvarez v. IBP, Inc., 339 F.3d 894, 911 (9th Cir. 2003) (applying Washington law in deciding whether deference is owed to Washington agency's interpretation of state statute), aff'd, 546 U.S. 21 (2005); Ernie Haire Ford, Inc. v. Ford Motor Co., 260 F.3d 1285, 1293 (11th Cir. 2001) ("[I]f Florida courts must defer to agency interpretations when construing Florida substantive law, then we must do the same."); Keys v. Safeway Ins. Co., No. 2:07-CV-372 KS MTP, 2011 WL 577357, at *6 (S.D. Miss. Feb. 9, 2011) (applying Mississippi law in deciding whether deference is owed to Mississippi agency's

interpretation of state statute).  Because this case arises under diversity jurisdiction, (FAC at ¶ 7), the court will apply California law in deciding whether the Commissioner's Order is "controlling law."

The California Supreme Court has held that while "an agency['s] interpretation of the meaning and legal effect of a statute is entitled to consideration and respect by the courts," the "courts are the ultimate arbiters of the construction of a statute." Yamaha Corp. of Am. v. State Bd. of Equalization, 19 Cal. 4th 1, 7, 17 (1998); see also California Assn. of Psychology Providers v. Rank, 51 Cal. 3d 1 (1990) (holding the same), as modified on denial of reh'g (Sept. 20, 1990); Dyna-Med, Inc. v. Fair Employment & Housing Com., 43 Cal.3d 1379, 1389 (1987) ("The final meaning of a statute . . . rests with the courts."); Morris v. Williams, 67 Cal.2d 733, 748, (1967) ("[F]inal responsibility for the interpretation of the law rests with the courts.").

In keeping with that principle, California courts are instructed to "independently judge the text of the statute," even where an agency has interpreted its meaning. Yamaha, 19 Cal. 4th at 7.  An agency's interpretation is only "one among several tools available to the court" in construing a statute. Id. "Depending on the context, [an agency's interpretation] may be helpful, enlightening, even convincing." Id. at 7-8.  It is not controlling, however. Dyna-Med, Inc. v. Fair Employment & Hous. Com., 43 Cal. 3d 1379, 1388 (1987) (holding that while agency interpretation of statutes may be "entitled to great weight," they are "not controlling"); Sheet Metal Workers Int'l Ass'n, Local Union No. 104 v. Rea, 153 Cal. App. 4th 1071, 1080 (1st

1  Dist. 2007) (holding the same), as modified (Aug. 29, 2007); Am.
2  Nat. Ins. Co. v. Low, 84 Cal. App. 4th 914, 924 (2d Dist. 2000)
3  (holding the same); see also Diablo Valley Coll. Faculty Senate
4  v. Contra Costa Cmty. Coll. Dist., 148 Cal. App. 4th 1023, 1034
5  (1st Dist. 2007) (responding to argument that agency
6  interpretation "is controlling unless it is plainly erroneous" by
7  noting that such rule "appears to be precluded by Yamaha").
8          This is particularly true in the context of
9  administrative interpretations, which, unlike quasi-legislative
10 rules, "do[] not implicate the exercise of a delegated lawmaking
11 power," but merely "represents the agency's view of the statute's
12 legal meaning and effect, questions lying within the
13 constitutional domain of the courts."  Yamaha, 19 Cal. 4th at 11.
14 Indeed, the California Supreme Court has held that such
15 interpretations, "however 'expert'" they may be, "command[] a
16 commensurably lesser degree of judicial deference" than quasi-
17 legislative rules, id. at 11, which are themselves not
18 controlling either, see Dyna-Med, 43 Cal. 3d at 1388 ("The
19 contemporaneous construction of a new enactment by the
20 administrative agency charged with its enforcement [is] not
21 controlling . . . .").
22         In bringing a motion for reconsideration, plaintiff
23 seeks an "extraordinary remedy," one that compromises "the
24 interests of finality and the conservation of judicial
25 resources."  Kona Enters, 229 F.3d at 890.  Hoping to obtain such
26 relief, plaintiff directs the court's attention to the
27 Commissioner's Order, which was issued without quasi-legislative
28 procedures after the court decided defendants' motion to dismiss.

(See Pl.'s Mem. at 5-6.) The authorities discussed above make clear that the Commissioner's Order does not control this court.[5] Because the Commissioner's Order does not control this court, it does not constitute "an intervening change in controlling law."

### B. The Court's June 20 Order is not Clearly Erroneous

Plaintiff continues to argue that the court's June 20 Order is erroneous. (See Pl.'s Reply at 6-10.) It contends that section 11735's "initial filing and waiting requirement is not abrogated solely because the Commissioner may reject or disapprove a rate that is actually filed" under section 11737. (Id. at 2.) "Nowhere in Section 11735," plaintiff notes, "does it state that the threshold filing requirement is set aside unless and until the Commissioner acts to 'disapprove' the unfiled rate." (Id. at 6.)

As a threshold matter, this argument mischaracterizes the court's June 20 Order. In that order, the court held that "a rate that has not been filed as required by § 11735 is not an unlawful rate unless and until the Commissioner conducts a hearing and disapproves the rate." (June 20 Order at 4.) That an insurer may lawfully use an unfiled rate does not mean that it

---

[5] That the Commissioner designated his ruling "precedential" under California Government Code § 11425.60(b) does not alter the court's analysis. That provision merely allows agencies to designate decisions as precedent. Cal. Gov. Code § 11425.60. It does not require courts to follow such precedent. See State Bldg. & Const. Trades Council of Cal. v. Duncan, 162 Cal. App. 4th 289, 300 (1st Dist. 2008) (agency precedents "can be relied upon in subsequent determinations" (emphasis added)); Sheet Metal Workers, 153 Cal. App. 4th at 1085 ("[A]n administrative decision may . . . be expressly relied on as precedent [if] so designated by the agency." (emphasis added)).

11

may do so without being subject to recourse. Section 11737 provides a procedure for parties like plaintiff to appeal such rates to the Commissioner who, after a hearing, "may affirm, modify, or reverse [the] action" of the insurer. Cal. Ins. Code § 11737. Thus, the court's June 20 Order does not "abrogate" or "set aside" section 11735, as plaintiff suggests. It merely recognizes that under the language of section 11737, an unfiled rate is not unlawful per se.

Plaintiff, of course, continues to contend that an unfiled rate is unlawful per se under section 11735. (See Pl.'s Reply at 6.) To the extent that reading is plausible, plaintiff nevertheless fails to show clear error in the court's alternative reading. Section 11737 states that "[t]he commissioner may disapprove a rate if the insurer fails to comply with the filing requirements under Section 11735" and "may affirm, modify, or reverse" a rate after an appeal and hearing. Cal. Ins. Code § 11737(a), (f) (emphases added). It further provides that "[i]f the commissioner disapproves a rate, the commissioner shall issue an order specifying . . . that rate shall be discontinued for any policy issued or renewed after a date specified in the order." Id. § 11737(g). Thus, section 11737 provides that an unfiled rate is not unlawful unless and until the Commissioner holds a hearing, disapproves the rate, and issues an order discontinuing the rate.

Nothing in section 11737 renders unfiled rates unlawful per se. Section 11735, meanwhile, states that insurers "shall file" their rates, but is silent on whether they may use unfiled

12

rates.[6]

Because section 11737 supports the court's interpretation of section 11735, that interpretation does not constitute "clear error."  Cf. McDowell, 197 F.3d at 1255 (declining to find "clear error" where the "question [was] a debatable one"); In re Cement Antitrust Litig. (MDL No. 296), 688 F.2d 1297, 1305 (9th Cir. 1982) ("[W]hen a district court is faced with two plausible interpretations of a statute that has not been construed by an appellate court, it would be difficult in one sense to characterize either interpretation as 'clearly erroneous.'"); Willis v. Mullins, No. CIV-F-04-6542 AWI GSA, 809 F. Supp. 2d 1227, 1233 (E.D. Cal. 2011) (Ishii, J.) ("Although the definition of clear error we have employed in differing contexts varies to some extent, it generally allows for reversal only where the court of appeals is left with a 'definite and firm conviction' that an error has been committed." (internal citation omitted)).

Because the Commissioner's Order does not constitute "an intervening change in controlling law" and because the court's June 20 Order was not a "clear error," the court will

---

[6] Plaintiff also cites section 2509.32 of title 10 of the California Code of Regulations in support of its interpretation of the Insurance Code.  (See Pl.'s Reply at 6.)  But nothing in that regulation contradicts the court's reading of section 11735.  All it does is repeat section 11735's requirement that an insurer file its rates with the Commissioner 30 days before their effective date.  See 10 CCR § 2509.32(a).  It states that "no insurer shall issue a workers' compensation insurance policy unless the policy is first approved by the Commissioner," id., but that obligation exists under section 11658, which is not at issue in this motion.

deny plaintiff's motion for reconsideration.

It should be noted that neither this Order nor the June 20 Order bars plaintiff from arguing that defendants' use of the RPA was illegal on grounds other than violation of section 11735. If plaintiff successfully argues that the RPA violated section 11658, or that the Commissioner's Order constituted a rate disapproval hearing within the meaning of section 11737 that rendered the RPA retroactively unlawful, for example, the court may still rule that the RPA was void with respect to plaintiff and other putative class members.

IT IS THEREFORE ORDERED that plaintiff's motion for reconsideration of the court's June 20, 2016 Order be, and the same hereby is, DENIED without prejudice as to attempts by plaintiff to invalidate the Reinsurance Participation Agreement on grounds other than the theory that defendants violated California Insurance Code section 11735.

Dated:   October 17, 2016

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE